IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **IFEOLUWA E. JOSHUA,** | |
| *Plaintiff*, | |
| v. | Civil No.: 1:24-cv-00667-JRR |
| **UR M. JADDOU, Director,** **United States Citizenship and Immigration Services,** *et al.*, | |
| *Defendant*. | |

**MEMORANDUM OPINION**

Pending before the court is Defendants Ur M. Jaddou, Connie Nolan, Alejandro Mayorkas, and Merrick Garland's Motion to Dismiss, or, in the Alternative, for Summary Judgment. (ECF No. 8; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss, will be granted.

**I.   BACKGROUND**[1]

Plaintiff Ifeoluwa Joshua initiated this action against Defendant Jaddou as director of the United States Citizenship and Immigration Services ("USCIS"), Defendant Nolan as director of the USCIS Vermont Service Center, Defendant Mayorkas as Secretary of the United States Department of Homeland Security, and Defendant Garland as Attorney General of the United States. Plaintiff Joshua seeks "declaratory and injunctive relief" to mandate that Defendants adjudicate her Form I-360 Petition for Special Immigrant, filed as a self-petitioner under the Violence Against Women Act ("VAWA") ("I-360 Petition" or "VAWA Self-Petition"), and her

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

I-485 Application to Adjust Status ("I-485 Application"). (ECF No. 1, the "Complaint," at p. 6; ECF No. 8-1 ¶ 34.)[2]  By way of background, "the VAWA self-petitioning process allows [a noncitizen][3] spouse of an abusive United States citizen [or lawful permanent resident] to seek classification as an immediate relative or a preference immigrant by filing a Form I-360 with USCIS." *Franjul-Soto v. Barr*, 973 F.3d 15, 17 (1st Cir. 2020) (citing 8 C.F.R. § 204.1(a)(3)). Specifically, a noncitizen who meets certain criteria may file an I-360 petition where she has been battered or been subjected to "extreme cruelty" perpetrated by her spouse or intended spouse. 8 U.S.C. § 1154(a)(1)(A)(iii). Section 1154 of the Immigration and Nationality Act ("INA") sets forth applicable procedures for petitions for adjustment of status, including for VAWA self-petitioners. 8 U.S.C. § 1154. An I-485 application to adjust status cannot be adjudicated until the applicant's I-360 Petition is adjudicated. (ECF No. 8-1 ¶ 12.) *Cf. Lovo v. Miller*, 107 F.4th 199, 202 (4th Cir. 2024) ("If USCIS approves a Form I-130 or similar petition, the noncitizen may then take the next step in applying for adjustment of status.").

USCIS received Plaintiff's I-485 Petition on September 28, 2020, and her I-360 Petition on September 1, 2021. (ECF No. 1 at p. 6.) VAWA self-petitions are "generally assigned for adjudication based on filing date," using the "First In, First Out" (or "FIFO") method whereby the self-petitions "that are filed earlier in time are adjudicated before self-petitions with a later filing date." (ECF No. 8-1 ¶ 22.) *See also Mokuolu v. Mayorkas*, No. CV RDB-24-817, 2024 WL 4783542, at *3 (D. Md. Oct. 1, 2024) (noting USCIS FIFO review practice for VAWA self-petitions); *Aina v. Mayorkas*, No. CV H-24-1006, 2024 WL 3070185, at *3 (S.D. Tex. June 20,

---

[2] As discussed in more detail later in this opinion, the court considers certain facts proffered in the Orise Declaration that bear on the court's exercise of jurisdiction.

[3] The court follows the practice of the Fourth Circuit and the U.S. Supreme Court in using the term "'noncitizen' as the equivalent to the statutory term 'alien.'" *Lovo v. Miller*, 107 F.4th 199, 202 n.1 (4th Cir. 2024) (quoting *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020)).

2024) (same).  The current estimated processing time for I-360 VAWA self-petitions is 41.5 months.[4]

Plaintiff filed this action on March 6, 2024, and describes her action as one for "declaratory and injunctive relief and in the nature of a mandamus to compel agency action that has been unreasonably delayed," citing the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. (ECF No. 1 at p. 4, 6.)  She avers that the APA "mandate[s] that an agency conclude matters presented to it with[in] a reasonable time."[5]  *Id.* at p. 6. Defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a claim, or in the alternative, for summary judgment.  (ECF No. 8.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)).  "In determining whether jurisdiction exists, 'the court may look beyond the pleadings and the jurisdictional allegations of

---

[4] USCIS, *Check Case Processing Times*, https://egov.uscis.gov/processing-times/ (last visited Feb. 6, 2025).  The court may take judicial notice of matters in the public record and publicly available information on state and federal government websites.  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).
[5] Plaintiff's Complaint seeks relief in the form of a court order compelling Defendants "to adjudicate Plaintiff's I-360 and I-485 applications before May 6, 2024"—a date that has passed since the filing of the Complaint.  (ECF No. 1 at p. 7.)  While this court does not have power to hear moot cases, *see Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty.*, 105 F.4th 554, 564 (4th Cir. 2024) (quoting *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006)), affording Plaintiff's pro se pleading liberal construction, the court is not persuaded that Plaintiff's case or controversy is no longer "live."  Plaintiff has not alleged any significance as to the purported deadline, and it is plain that her action seeks adjudication of her VAWA Self-Petition and I-485 Application, which, to the court's knowledge, has not occurred.

the complaint and view whatever evidence has been submitted on the issue.'" *Id.* at 176 (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)).

Subject matter jurisdiction challenges may proceed in two ways: "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same). Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

In support of their jurisdictional challenge, Defendants attach the declaration of Sharon Orise, Adjudications Division Chief for the Service Center Operations Directorate of USCIS. (ECF No. 8-1; the "Orise Declaration.") The court will consider the Orise Declaration to the extent it bears on Defendants' jurisdictional challenges.[6] (ECF No. 8-1.) Notably, Plaintiff's opposition

---

[6] Plaintiff similarly attaches exhibits to her opposition. (ECF Nos. 10-1, 10-2, 10-3, 10-4.) Because none of the exhibits bears on Defendants' jurisdictional challenge, the court declines to consider them in that vein. The court notes, however, that Plaintiff attaches a document to her opposition, which she titles a "complaint." (ECF No. 10-1.) Plaintiff did not indicate in her briefing that she intended to file an amended complaint; nor did she file the document as such. The court therefore considers the document consistent with how she has offered it—as an attachment to her opposition. Notably, Plaintiff may not amend her Complaint through her opposition to Defendants' Motion. *See Nat'l Ass'n for Advancement of Colored People v. Bureau of Census*, 382 F. Supp. 3d 349, 377 n.17 (D. Md. 2019) (noting

4

either raises no challenge to the facts attested to in the Orise Declaration, or, where Plaintiff does raise a dispute, Plaintiff's contention is contradicted by caselaw.[7]

### B. Federal Rule of Procedure 12(d)

In their Motion, Defendants also seek dismissal of Plaintiff's Complaint for failure to state a claim or, in the alternative, summary judgment. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 WL 5335477, at *3 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Maryland Dep't of Transportation*, No. CV

---

that an opposition to a motion to dismiss "is not a vehicle for amending a complaint"). Accordingly, to the extent Plaintiff asserts new factual allegations in her opposition and attachments, the court may not consider them. However, even if the court were to consider the few relevant factual allegations asserted, it would not materially alter the court's analysis or adjudication of the Motion.

[7] Plaintiff mistakenly contends that USCIS uses a case-by-case method of reviewing I-360 Petitions; however, Plaintiff's contention rests on reference to an inapplicable policy manual pertaining to family-based adoption petitions, not the I-360 VAWA self-petition. *See* (ECF No. 10 at p. 2); USCIS, *Chapter 2 – Eligibility*, https://www.uscis.gov/policy-manual/volume-5-part-e-chapter-5 (last visited Feb. 6, 2025). Absent that reference, Plaintiff does not dispute that USCIS uses the FIFO method. *Id.* Moreover, as explained *supra*, courts generally recognize USCIS's use of the FIFO method in adjudicating VAWA self-petitions.

5

CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

Because the court concludes that dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6) is warranted without consideration of matters outside the pleading, the court need not reach Defendants' alternative argument for summary judgment. In view of the foregoing, and noting that this case is in its infancy with no discovery yet conducted, the court construes the motion as one for dismissal pursuant to Rule 12(b)(6) (in addition to Rule 12(b)(1)).

### C. Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

As an initial matter, the court is ever mindful that *pro se* filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards that filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).\

A. **Jurisdictional Arguments**

1. *Mandamus Act Claim*

Defendants first argue that the court lacks jurisdiction as to Plaintiff's Mandamus Act claim. (ECF No. 8 at p. 6–7.) In opposition, Plaintiff contends she meets the criteria for a Mandamus Act claim, and argues she has a clear right to relief and Defendants have a clear duty to perform. (ECF No. 10 at p. 2.)

Courts "lack jurisdiction to decide claims for mandamus relief which would be duplicative of their cause of action under the APA." *Jahangiri v. Blinken*, No. CV DKC 23-2722, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024); *see Turner v. Blinken*, No. CV RDB-24-318, 2024 WL 4957178, at *1 n.3 (D. Md. Dec. 3, 2024) (same); *Mokuolu v. Mayorkas*, No. CV RDB-24-817, 2024 WL 4783542, at *4 n.11 (D. Md. Oct. 1, 2024) (same); *Jaraba v. Blinken*, 568 F. Supp. 3d 720, 731 (W.D. Tex. 2021) (same). Accordingly, here, where Plaintiff asserts the same claim under the Mandamus Act and the APA, the court lacks jurisdiction over the duplicative Mandamus Act claim.[8] Even were the court to determine it had jurisdiction over the Mandamus Act claim, the claim would still fail, because, as the court explains below, Plaintiff's APA claim is subject to dismissal; and dismissal of Plaintiff's APA claim would "appl[y] with equal force to [Plaintiff's] mandamus claim." *See Jahangiri*, 2024 WL 1656269, at *14 (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020)).

2. *APA Claim*

Citing 5 U.S.C. § 701(a), Defendants also appear to argue that this court lacks jurisdiction over Plaintiff's APA claim. (ECF No. 8 at p. 8.) According to Defendants, "[n]o statute or regulation specifies enforcement timelines for I-360 VAWA petitions," and "[t]he pace at which

---

[8] Accordingly, the court will not reach Defendants' remaining arguments as to the court's jurisdiction of Plaintiff's Mandamus Act claim, or Plaintiff's opposition to same.

USCIS adjudicates the petitions is left to the USCIS'[s] discretion and the APA expressly excludes those actions from judicial review." *Id.* at p. 8–9.

"[T]he APA does not permit judicial review of a challenge to 'agency action [that] is committed to agency discretion by law.'" *Lovo v. Miller*, 107 F.4th 199, 210 (4th Cir. 2024) (quoting 5 U.S.C. § 701(a)(2)). "Under § 706, we may only compel 'agency action' that has been 'unlawfully withheld or unreasonably delayed.'" *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365 (4th Cir. 2021) (quoting 5 U.S.C. § 706(1)). A claim that an agency action is unreasonably delayed "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Lovo*, 107 F.4th at 210 (emphasis in original) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). "But where an agency is *not required* to do something, [courts] cannot compel the agency to act—let alone to act faster." *Gonzalez*, 985 F.3d at 366 (emphasis in original).

In assessing whether an agency is "bound to act," courts "first look to the text of the relevant statutes and regulations." *Lovo*, 107 F.4th at 211. As the Fourth Circuit explained:

> Our decision in *Gonzalez v. Cuccinelli* provides useful guidance for when language in those sources is sufficiently clear for us to conclude that an agency is mandated to act. *See Gonzalez*, 985 F.3d at 371. In *Gonzalez*, we were asked to decide whether federal courts had subject-matter jurisdiction to review USCIS's delays adjudicating 1) applications for work authorization pending U-Visa approval, and 2) U-Visa petitions. The statute addressing work authorization did not mandate adjudication, *see* 8 U.S.C. § 1184(p)(6), and the relevant regulation stated that "USCIS, *in its discretion, may authorize* employment for . . . petitioners and qualifying family members," 8 C.F.R. § 214.14(d)(2) (emphasis added). So, we held that the language in neither the statute nor the regulation was sufficient to mandate USCIS to act regarding work authorization, and its failure to act was therefore unreviewable. *Gonzalez*, 985 F.3d at 366–71.
>
> In contrast, the relevant regulations for the U-Visa petitions provided that "[i]f USCIS determines that the petitioner has met the

9

> requirements for U-1 nonimmigrant status, USCIS *will* approve [the U-Visa application]," 8 C.F.R. § 214.14(c)(5)(i) (emphasis added)), and that "[a]ll eligible petitioners who, due solely to [a statutory cap on the number of U-Visas], are not granted U-1 nonimmigrant status *must* be placed on a waiting list," *id.* § 214.14(d)(2) (emphasis added)). Those uses of mandatory language provided no room for agency discretion and therefore established that USCIS "committed itself by regulation to" adjudicate the petitions and to "place eligible applicants on the [U-Visa] waiting list." *Gonzalez*, 985 F.3d at 374 n.10. Since USCIS had so bound itself, its failure to timely adjudicate U-Visa petitions was reviewable. *Id.*
>
> As illustrated by our conclusion in *Gonzalez*, the presence of "unmistakably mandatory" language, such as the word "will," can provide sufficient evidence of the unequivocal command required for us to hold that an agency is compelled to act. *Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993) (quoting *Hewitt v. Helms*, 459 U.S. 460, 471, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Likewise, explicit references to an agency's discretion, or even to discretionary language, such as the term "may," are "generally construed as permissive rather than mandatory[.]" *United Hosp. Ctr., Inc. v. Richardson*, 757 F.2d 1445, 1453 (4th Cir. 1985).

*Id.* at 211–12.

"Federal courts, including those in the Fourth Circuit, are split as to whether adjudication of a Form I-485 Adjustment of Status Application is a non-discretionary duty." *Mokuolu*, 2024 WL 4783542, at *5 (citing *Kale v. Jaddou*, 2023 WL 4939367, at *5 (E.D.N.C. Aug. 2, 2023)). In the context of VAWA self-petitioners, [however,] . . . the few courts to have considered the issue have determined that immigration regulations or § 1154(b) of the Immigration and Nationality Act impose a non-discretionary duty to adjudicate VAWA petitions." *Id.* (citing cases).

The *Mokuolu* court recently addressed an argument similar to (if not the same as) Defendants' argument here. *Id.* at *1. The defendants in *Mokuolu* argued, as Defendants do here, that "the APA only provides jurisdiction for a claim of delay where an agency has a mandatory duty to act within a specific time and bars judicial review where, as here, an action falls within an agency's discretion." *Id.* at *4. The *Mokuolu* court looked to the language of INA section 1154(b),

10

which "provides directions on how to treat several special categories of visa applicants," *see Mestanek v. Jaddou*, 93 F.4th 164, 171 (4th Cir. 2024), to consider whether the provision imposes a non-discretionary duty to adjudicate VAWA Petitions. *Mokuolu*, 2024 WL 4783542, at *5. Section 1154(b) provides in relevant part:

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) or 1153(b)(3) of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

8 U.S.C. § 1154(b).[9]

Relatedly, 8 C.F.R. § 245.2 on applications for adjustment of status provides that an "applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2. In accordance with the Fourth Circuit's guidance on language that is "sufficiently clear . . . to conclude that an agency is mandated to act," the *Mokuolu* court concluded: "Consistent with the language of 8 U.S.C. § 1154(b), the act of adjudicating VAWA self-petitions is non-discretionary. Similarly, under 8 C.F.R. § 245.2(a)(5)(i), the duty to adjudicate a Form I-485 is non-discretionary." 2024 WL 4783542, at *5. The court therefore concluded that it had jurisdiction over the plaintiff's APA unreasonable delay claim. *Id.*

The foregoing analysis—both as to the relevant language of section 1154(b) and 8 C.F.R. § 245.2, in accordance with Fourth Circuit direction, and this court's previous interpretation of

---

[9] While the statute refers to the Attorney General, USCIS "exercises authority delegated by the Attorney General and the Secretary of Homeland Security." *Bouarfa v. Mayorkas*, 604 U.S. 6, 9 (2024) (citing 8 U.S.C. § 1154(a); *see Lovo v. Miller*, 107 F.4th 199, 203 n.2 (4th Cir. 2024).

11

same—is persuasive to this court. The court concludes that it has jurisdiction over Plaintiff's APA claim because the duties to adjudicate Plaintiff's I-360 Petition and I-485 Application are non-discretionary.

### 3. Unreasonable Delay Claim and Analysis of the *TRAC* Factors

Having determined that the court has jurisdiction over Plaintiff's APA claim, the court turns to Defendant's argument that Plaintiff's unreasonable delay claim fails as a matter of law. (ECF No. 8 at p. 9–16.) The APA, 5 U.S.C. § 555(b), provides that an agency "within a reasonable time . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). A claim brought pursuant to 5 U.S.C. § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *North v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "If an agency fails to comply with this requirement, the APA authorizes courts to 'compel agency action unlawfully withheld or unreasonably delayed . . . .'" *Begum v. U.S. Dep't of State*, No. 1:22-CV-00478-JMC, 2022 WL 16575703, at *5 (D. Md. Oct. 31, 2022) (quoting 5 U.S.C. § 706(1)). In assessing claims of agency unreasonable delay, courts generally consider six factors as set forth by the D.C. Circuit in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

>(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
>(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (citations omitted).

While the "the unreasonable-delay analysis under *TRAC* is a fact-intensive inquiry," a plaintiff does not automatically "survive[] a motion to dismiss by merely alleging that a processing delay is unreasonable." *Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-CV-893 (APM), 2022 WL 424967, at *5 (D.D.C. Feb. 11, 2022). Her pleading is "still subject to the standard for pleadings under *Twombly* and *Iqbal*," and the court therefore must determine whether her complaint alleges facts sufficient "to state a plausible claim for unreasonable administrative delay." *Id.* (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)). As such, courts routinely consider whether a plaintiff states a claim of unreasonable delay under the APA on a motion to dismiss. *See, e.g.*, *Mokuolu v. Mayorkas*, No. CV RDB-24-817, 2024 WL 4783542, at *2 (D. Md. Oct. 1, 2024); *Jahangiri v. Blinken*, No. CV DKC 23-2722, 2024 WL 1656269, at *1 (D. Md. Apr. 17, 2024) (citing cases); *Begum*, 2022 WL 16575703, at *1; *Ahmed*, 2022 WL 424967, at *1.

1. ***TRAC* Factors One and Two**

"The first factor . . . is typically considered together with the second TRAC factor." *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022); *see also Mokuolu*, 2024 WL 4783542, at *6 (D. Md. Oct. 1, 2024) ("Some courts have deemed the first *TRAC* factor the 'most important' of the *TRAC* analysis."). In analyzing the first two TRAC factors, the court focuses on "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp.

13

3d 295, 300 (D.D.C. 2014); *see Jahangiri*, 2024 WL 1656269, at *8 (same); *Begum*, 2022 WL 16575703, at *7 (explaining the first two factors "focus on the reasonableness of the delay and whether Congress has set a timeline for the completion of the action in question").

"Congress has not supplied a statutory or regulatory timeframe within which Defendants must adjudicate VAWA self-petitions." *Mokuolu*, 2024 WL 4783542, at *7 (citing *Dyvonyak v. Mayorkas*, No. 23-CV-16528, 2024 WL 3520058, at *2 (N.D. Ill. July 24, 2024)). Relevant here, courts have concluded that the FIFO method "constitutes a rule of reason."[10] *Mokuolu*, 2024 WL 4783542, at *6 (citations omitted); *see Orozco v. Blinken*, No. 22 C 5134, 2023 WL 4595377, at *4 (N.D. Ill. July 18, 2023) (describing the FIFO method as "a recognized rule of reason"); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) ("Courts have recognized that a 'first-in, first-out method' satisfies the rule-of-reason inquiry.") (citing cases); *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021) ("Courts reviewing similar challenges have held that processing first-filed petitions before later-filed petitions does indeed constitute a 'rule of reason.'") (citing cases); *cf. Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021).

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "No bright lines have been drawn in this context, but '[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (citing *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC,

---

[10] As discussed *supra*, VAWA self-petitions are reviewed according to the FIFO method. *See, e.g.*, *Mokuolu v. Mayorkas*, No. CV RDB-24-817, 2024 WL 4783542, at *3 (D. Md. Oct. 1, 2024) (noting USCIS's use of the FIFO method in reviewing VAWA self-petitions); *Aina v. Mayorkas*, No. CV H-24-1006, 2024 WL 3070185, at *3 (S.D. Tex. June 20, 2024) (same).

14

2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)); *see Mokuolu*, 2024 WL 4783542, at *7 (same); *Dyvonyak*, 2024 WL 3520058, at *2 (same).

Here, Plaintiff's I-360 Petition has been pending for about 41 months, or a little under 3.5 years (and her I-485 Application, which cannot be adjudicated until her I-360 Petition is adjudicated, has been pending for a little under 4.5 years). In accordance with the caselaw cited above, that delay is not unusual, and is often not unreasonable; this conclusion is further supported by cases finding the FIFO method is a rule of reason. This time frame is also in line with the estimated processing time for VAWA self-petitions (albeit, by a small margin).[11] *See Aina v. Mayorkas*, No. CV H-24-1006, 2024 WL 3070185, at *4 (S.D. Tex. June 20, 2024) (noting that the plaintiff's VAWA petition had not been pending for the current estimated processing time and finding that the *TRAC* factors weight in the defendants' favor); *Chuttani v. United States Citizenship & Immigr. Servs.*, No. 3:19-CV-02955-X, 2020 WL 7225995, at *4 (N.D. Tex. Dec. 8, 2020) (explaining that the court was "reluctant to hold unreasonable any delay in adjudicating an . . . application that's less than the upper limit of [USCIS's] current estimated processing time for that particular application form"). Moreover, while the court can infer the various impacts of such a delay on Plaintiff, Plaintiff "has not alleged that Defendants improperly adjudicated later-filed petitions before reaching her VAWA self-petition or otherwise deviated from the FIFO method." *See Mokuolu*, 2024 WL 4783542, at *6. Accordingly, these factors weigh in Defendants' favor.

2. *TRAC* **Factors Three and Five**

"'The third and fifth factors are often considered together, and require the [c]ourt to consider Plaintiffs' interests, health, and welfare,' and the prejudice to those interests from delay."

---

[11] USCIS, *Check Case Processing Times*, https://egov.uscis.gov/processing-times/ (last visited Feb. 6, 2025).

*Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 12 (D.C. Cir. 2021) (quoting *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021) (citation omitted)). "To evaluate those interests, courts consider a plaintiff's interests alongside those of similarly situated individuals." *Mokuolu*, 2024 WL 4783542, at *7; *see Dyvonyak*, 2024 WL 3520058, at *3 (same). Plaintiff alleges no facts regarding what impact the delay has on her interests, health, or welfare, if any. While the court can infer that a delay in processing would certainly be difficult for Plaintiff, she fails to allege that any such impact is distinct or more significant than "those experienced by all VAWA self-petitioners."[12]  *See Mokuolu*, 2024 WL 4783542, at *7. Because Plaintiff fails to allege facts in support of these factors, they favor Defendants.

   3.  ***TRAC* Factor Four**

The fourth *TRAC* factor refers to "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. It calls for the court to consider "how a court order in [the] [p]laintiff's favor would shift existing agency priorities." *Ahmed*, 2022 WL 424967, at *6. The fourth factor carries significant weight. *See Begum*, 2022 WL 16575703, at *8 (quoting *Ahmed*, 2022 WL 424967, at *6). Indeed, "[c]ourts often find this factor to 'carr[y] the greatest weight' and have 'refused to grant relief, even [though] all the other factors considered in *TRAC* favored it, where a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'" *Jahangiri*, 2024 WL 1656269, at *11 (quoting *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)). It "requires an assessment of the impact that expediting the delayed action would have on other

---

[12] As the court explained *supra*, Plaintiff's factual allegations asserted in opposition—that Defendants "deprived [her] of her right to a decision . . . and the peace of mind to which she is entitled" and that the delay "caused inordinate and unfair amounts of stress, expense, and hassle for [Plaintiff]— would not compel a different result here. (ECF No. 10-1 at p. 5.) Such allegations are vague, conclusory, and fail to set forth any circumstance unique to Plaintiff as compared to others whose petitions are also pending.

16

agency priorities . . . ." *Logan v. Blinken*, No. 21-2275 (FYP), 2022 WL 3715798, at *6 (D.D.C. Aug. 29, 2022).

Importantly, "federal courts have rejected plaintiffs' § 706(1) claims where the only relief would create a "line-skipping concern" relative to other petitioners." *Mokuolu*, 2024 WL 4783542, at *8 (quoting *Dyvonyak v. Mayorkas*, No. 23-CV-16528, 2024 WL 3520058, at *3 (N.D. Ill. July 24, 2024)); *see Jahangiri*, 2024 WL 1656269, at *12 (finding the fourth factor strongly favored defendants where the relief the plaintiff sought "would move [her] to the front of the queue and delay other adjudications"); *Aina*, 2024 WL 3070185, at *4 (finding the *TRAC* factors weighed heavily in defendants favor where the requested action "would require USCIS to put him in front of other earlier-filed VAWA petitions . . . or to order users to divert resources from other priorities"); *Begum*, 2022 WL 16575703, at *8 (finding the fourth *TRAC* factor weighed in favor of defendants where plaintiff effectively requested to "jump past all others who are undergoing the application procedure"); *Logan*, 2022 WL 3715798, at *6 (explaining that court intervention is typically ""unwarranted where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain'") (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)); *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *7 (D.D.C. Sept. 8, 2022) (explaining that the fourth factor favored defendants where plaintiff "effectively ask[ed] the Court to 'reorder agency priorities' and 'move all others back one space and produce no net gain'") (citations omitted)).

Like in the above-referenced cases, Plaintiff here seeks to compel adjudication of her petitions and effectively go to the front of the line. Ultimately, the relief that Plaintiff seeks is simply what courts seek to avoid—a reordering of the applicant queue when no net gain in such

adjudications is achieved as a result.  *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021).  Moreover, Plaintiff "has not alleged facts sufficient to show that compelling adjudication of her case is appropriate when doing so will place [her] ahead of VAWA self-petitioners who filed first, effectively shifting the processing delay to other petitioners without improving Defendants' efficiency."  *Mokuolu*, 2024 WL 4783542, at *8.  The fourth *TRAC* factor therefore favors Defendants.

### 4. *TRAC* Factor Six

The sixth factor "reminds courts that they 'need not find any impropriety . . . to hold that agency action is unreasonably delayed.'"  *Meyou v. U.S. Dep't of State*, No. 21-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022) (quoting *TRAC*, 750 F.2d at 80).  Plaintiff does not allege Defendants have acted in bad faith.  Accordingly, factor six is neutral.  *See, e.g.*, *Mokuolu*, 2024 WL 4783542, at *6 n.13; *Begum*, 2022 WL 16575703, at *9; *Jahangiri*, 2024 WL 1656269, at *12; *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 (D.D.C. 2021).

### 5. Weighing the *TRAC* Factors

In view of the foregoing analysis of the *TRAC* factors, the court concludes that Plaintiff fails to allege a plausible claim of unreasonable delay under the APA.  The court will therefore grant the Motion and dismiss Plaintiff's Complaint.

### IV. CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 8), construed as a motion to dismiss, will be granted.

Date: February 10, 2025                                            /s/
                                                                            Julie R. Rubin
                                                                            United States District Judge